**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| T.L.,<br><br>Petitioner,<br><br>v.<br><br>Warden, STEWART DETENTION CENTER, *et al.*,<br><br>Respondents. | : | Case No. 4:26-cv-125-CDL-ALS |

**REPORT AND RECOMMENDATION**

Pending before the Court is Petitioner's application for habeas corpus relief and Respondents' Motion to Dismiss thereto. (ECF Nos. 1, 5). For the reasons explained below, it is recommended that Respondents' Motion to Dismiss (ECF No. 5) be granted and Petitioner's application for habeas relief be dismissed without prejudice. (ECF No. 1).

**BACKGROUND**

In support of their Motion to Dismiss (ECF No. 5), Respondents submit the Declaration of Supervisory Detention and Deportation Officer Roddreck L. Kitchens ("Officer Kitchens"). (ECF No. 5-1). Petitioner, a native and citizen of Vietnam, entered the United States at Atlanta, Georgia, on June 25, 1985, and became a lawful permanent resident the following year. (ECF No. 5-1, at 1). In 1997, Petitioner pleaded guilty in DeKalb County, Georgia, to two counts of battery and received a twelve-month sentence of confinement, suspended for twelve months on probation. (ECF No. 5-1); (citing ECF No 5-4).

On October 30, 2013, Immigration and Customs Enforcement ("ICE") arrested Petitioner and served him with a notice to appear charging him as removable under INA

§ 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), on the ground that his battery conviction constituted an aggravated felony crime of violence. (ECF No. 5-1 at 1) (citing ECF No. 5-5). Petitioner sought no relief from removal, and on December 9, 2013, an immigration judge ordered him removed to Vietnam.[1] (ECF No 5-1, at 1) (citing ECF No 5-6). On January 31, 2014, ICE released Petitioner under an Order of Supervision. (ECF No 5-1, at 1) (citing ECF No 5-7). According to Officer Kitchens' declaration, Petitioner thereafter reported to ICE as directed, and in December 2019 he completed and returned a travel document application ICE had presented to him. (ECF No. 5-1, at 2) (citing ECF Nos. 5-2, 5-3). On July 19, 2025, ICE revoked the Order of Supervision and rearrested Petitioner. (ECF Nos. 5-1, at 2) (citing ECF No. 5-8). Petitioner was transferred to Stewart Detention Center in Lumpkin, Georgia, where he remains detained under 8 U.S.C. § 1231(a). ECF No. 5-1.

Petitioner filed the instant Petition for Writ of Habeas Corpus on January 26, 2026. (ECF No. 1). The Court ordered a response, and on February 17, 2026, Respondents filed a Motion to Dismiss. (ECF Nos. 3, 5). Petitioner was notified of his right to file a response to the Motion to Dismiss and failed to do so. (ECF No. 7). The matter is ripe for a recommendation.

**DISCUSSION**

Petitioner raises two grounds for relief. First, he argues he is entitled to release because "Petitioner's removal to Vietnam or any other country is not significantly likely to occur in the reasonably foreseeable future." (ECF No. 1, at 7). Second, he argues his

[1] The petition alleges the removal order was entered November 20, 2013, and became final upon Petitioner's waiver of appeal. (ECF No. 1, at 3). The order of removal, which indicates Petitioner waived his right to an appeal, is dated December 9, 2013. (ECF No. 5-6). The discrepancy does not affect the analysis, as Petitioner's post-final-removal-order detention is measured from his July 19, 2025 redetention in any event.

continuing detention violates the Fifth Amendment Due Process Clause, both substantively and procedurally. *Id.* at 7, 8. Neither contention has merit.

## I. Petitioner is not entitled to release under *Zadvydas*.

### *A. Zadvydas Standard*

Petitioner's detention is governed by 8 U.S.C. § 1231(a). Under § 1231(a), "when an alien is ordered removed," the Attorney General "shall" remove the alien within ninety days. 8 U.S.C. § 1231(a)(1)(A). This removal period begins to run on the latest of:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Detention during the ninety-day removal period is mandatory. 8 U.S.C. § 1231(a)(2). Moreover, § 1231(a) allows for the continued detention of certain categories of aliens beyond this ninety-day removal period. It provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [§ 1231(a)(3)].

8 U.S.C. § 1231(a)(6).[2]

By its explicit terms, § 1231(a)(6) does not limit the length of detention for an alien detained under that section. In *Zadvydas*, however, the United States Supreme Court applied the doctrine of constitutional avoidance to "read an implicit limitation into the statute." 533 U.S. at 689. The Supreme Court held that § 1231(a)(6) authorizes post-

---

[2] Petitioner falls into this category because he was ordered removed as an alien "removable under section . . . 1227(a)(2)" — specifically, INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony).

removal-order detention only for a period "reasonably necessary" to accomplish the alien's removal from the United States. *Id.* at 699-700. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish such removal. *Id.* at 701. The Court of Appeals for the Eleventh Circuit has explained that to be entitled to release under *Zadvydas*, an alien must show: "(1) that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 petition is filed; and (2) evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) (quotation marks omitted); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under *Zadvydas* the alien . . . must show post-removal order detention in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

*B. Significant Likelihood of Removal*

The parties do not dispute that Petitioner satisfies the first *Zadvydas* prong by showing that he has been detained for more than six months after his removal order became final. The issue is whether Petitioner has met his burden of showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. The Court concludes he has not.

Petitioner offers no evidence — only the conclusory assertion that his "removal to Vietnam or any other country is not significantly likely to occur in the reasonably foreseeable future." (ECF No. 1, at 7). Parroting the *Zadvydas* standard is not evidence of it. *See Akinwale*, 287 F.3d at 1052 (affirming dismissal where petition "failed to present any facts" showing removal could not be executed). This Court rejected an identical claim

in *Rosales-Rubio v. Attorney General of the United States*, No. 4:17-CV-83-CDL-MSH, 2018 WL 493295, at *3 (M.D. Ga. Jan. 19, 2018) (recommendation adopted, 2018 WL 5290094 (M.D. Ga. Feb. 8, 2018)). In that case, this Court held that "conclusory statements alleging [Petitioner's] removal in the reasonably foreseeable future is unlikely are insufficient to state a claim under *Zadvydas*." Unlike the "essentially stateless" petitioner in *Zadvydas*, whom three countries had refused to accept, Petitioner is indisputably a citizen of Vietnam, and the record contains no evidence that Vietnam will refuse to repatriate him. *Id.*

Petitioner's remaining argument — that he "has done everything to cooperate with ICE in obtaining travel documents and has filled applications several times" — likewise fails to show no significant likelihood of removal. (ECF No. 1, at 5). Cooperation is evidence of Petitioner's conduct, not of any impediment to removal, and past delay does not show that removal is unlikely now. *Meskini v. Att'y Gen. of the United States*, No. 4:14-CV-42 (CDL), 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018). The proper focus "is on today and whether Petitioner will likely be removed in the reasonably foreseeable future based on the facts available to the Court today." *Id.* Because Petitioner presents no evidence supporting his claim, he fails the second *Zadvydas* prong, and the burden does not shift to Respondents. *Gozo*, 309 F. App'x at 346.

Even if the burden were shifted to Respondents, Respondents have shown a significant likelihood of removal in the reasonably foreseeable future. Officer Kitchens declares that Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE/ERO") is presently removing Vietnamese nationals subject to final orders of removal to Vietnam. (ECF No. 5-1, at 2). He states that ICE/ERO removed 699 Vietnamese nationals to Vietnam in fiscal year 2025. *Id.* He further states that in fiscal

year 2026, travel documents have been issued within thirty days of presenting the request to the government of Vietnam. *Id.* ICE/ERO submitted Petitioner's immigration documents for translation into Vietnamese, a necessary prerequisite to submitting a travel document request. *Id.* ICE/ERO also conducted a panel interview of Petitioner pursuant to 8 C.F.R. § 241.4(i), and a final determination of that interview is pending. *Id.*

This Court has recently found materially identical evidence sufficient to show a significant likelihood of removal in the reasonably foreseeable future. In *V.H.N. v. Warden, Stewart Detention Center*, the Court considered a Vietnamese national's *Zadvydas* claim supported by the same figures presented here — 699 removals to Vietnam in fiscal year 2025, and travel documents issued within thirty days in fiscal year 2026 — and concluded that this evidence showed a significant likelihood of removal in the reasonably foreseeable future. No. 4:25-cv-514-CDL-CHW, 2026 WL 1127847, at *3 (M.D. Ga. Mar. 4, 2026). Accordingly, because Petitioner has not met his burden under *Zadvydas*— and because Respondents have shown a significant likelihood of removal in the reasonably foreseeable future — Petitioner's *Zadvydas* claim should be dismissed.

**II. Petitioner's detention does not violate due process**

Petitioner also contends that his continued detention violates the substantive and procedural components of the Fifth Amendment's Due Process Clause. The Court need not decide whether such an as-applied due process claim is viable outside the *Zadvydas* framework. *Zadvydas* itself construed § 1231(a)(6) to avoid the very Fifth Amendment concerns Petitioner raises, and thus, having found that Petitioner fails to show there is no significant likelihood of his removal in the reasonably foreseeable future, the Court need not separately address his constitutional claim. *See G.A. v. Warden, Stewart Detention Ctr.*, No. 4:24-cv-24-CDL-CHW, at 12 (M.D. Ga. Nov. 1, 2024) ("In *Zadvydas*, the Court

interpreted § 1231(a)(6) so as to avoid a Fifth Amendment Due Process Clause violation. Thus, if a petitioner fails to establish a claim under *Zadvydas*, a separate due process claim also fails.") (recommendation adopted, ECF No. 35 (M.D. Ga. Feb. 14, 2025)); *E.R.G.V. v. Warden, Stewart Detention Ctr.*, No. 4:20-cv-294-CDL-MSH, 2021 WL 11728240, at *3 (M.D. Ga. Jan. 28, 2021) ("As to any due process challenge to his continuing detention under § 1231(a), *Zadvydas* forecloses that claim.") (recommendation adopted, 2021 WL 11728170 (M.D. Ga. Mar. 11, 2021*)); see also* *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) ("[T]he *Zadvydas* standard is due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation."). Accordingly, because Petitioner has failed to establish a claim under *Zadvydas*, due process claim likewise fails, and it is recommended that his petition be denied.

## CONCLUSION

For the reasons explained above, it is **RECOMMENDED** that Respondents' Motion to Dismiss (ECF No. 5) be **GRANTED** and that Petitioner's petition for a writ of habeas corpus (ECF No. 1) be **DISMISSED without prejudice**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. *See* M.D. Ga. L.R. 7.4. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in

a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED**, this 31st day of July, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE